UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                    :
INTERNATIONAL FLIGHT RESOURCES,   :
LLC,                                                :
                                                    :
                              Plaintiff,            :               21-CV-3029 (VSB)
                                                    :
                    -against-                       :           **OPINION & ORDER**
                                                    :
JOSEPH AUFIERO, WELLS FARGO         :
MERCHANT SERVICES, LLC, & WELLS    :
FARGO & CO.,                                        :
                                                    :
                              Defendants.  :
--------------------------------------------------------X

<u>Appearances</u>:

Jean-Marc Zimmerman
Lucosky Brookman LLP
Woodbridge, New Jersey
*Counsel for Plaintiff*

Brian T. Egan
Christopher Adam Bianco
Egan & Golden, LLP
Patchogue, New York
*Counsel for Defendant Joseph Aufiero*

Katherine A. Garland
McGuireWoods LLP
New York, New York
*Counsel for Defendants Wells Fargo Merchant Services, LLC and Wells Fargo & Co.*

<u>VERNON S. BRODERICK</u>, United States District Judge:

        Before me are motions to dismiss filed by Defendants Joseph Aufiero ("Aufiero"), Wells

Fargo Merchant Services, LLC ("WFMS"), and Wells Fargo & Co. ("WF," and together with

WFMS, "Wells Fargo") (collectively, "Defendants"), arguing that Plaintiff International Flight

Resources LLC ("IFR") failed to state any viable claims for relief against them.  Because I

conclude that IFR's claims against Wells Fargo contradict a settlement agreement between IFR and WFMS, and because the applicable statutes of limitations have run as against Aufiero, Defendants' motions are GRANTED.

## I.    **Factual Background**[1]

IFR, a Florida limited liability company whose only member is a citizen of Florida, is a business that provides "trip planning and worldwide flight support services for corporate and private jet flights."  (SAC ¶ 1.)[2]  WFMS is a Delaware limited liability company whose members are citizens of Delaware, California, South Dakota, and Wisconsin.  (*See id.* ¶¶ 3–6.)  WF is a Delaware corporation with its principal place of business in California.  (*Id.* ¶ 4.)  At the time of the filing of the Second Amended Complaint, Aufiero was a citizen of New York.  (*Id.* ¶ 2.)  Aufiero is alleged to have acted through his "agents," the S Group LLC ("S Group"), V.J. Slocum of the S Group ("Slocum"), and T.J. Humes of Humes McCoy Aviation Inc. ("Humes," and together with S Group and Slocum, the "Agents").  (*Id.*)  The Agents are not parties to this action.

Around October 20, 2016, Aufiero retained IFR to arrange a roundtrip private jet flight between the United States and Liberia.  (*Id.* ¶ 12.)  IFR required a deposit of $169,850, which Aufiero paid using an American Express ("Amex") credit card in two installments on or about

---

[1] The facts in this section are drawn from Plaintiff's Second Amended Complaint, (Doc. 57), as well as from certain documents properly before me for the purposes of a Rule 12(b)(6) motion, *see United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," as well as any "document 'integral' to the complaint." (internal quotation marks omitted)).  I also take judicial notice of certain publicly filed documents, but do not rely on the truth of the matters asserted in them.  *See Glob. Network Commc'ns v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  My references to these facts should not be construed as a finding as to their veracity, and I make no such findings.

[2] "SAC" refers to the Second Amended Complaint filed on March 14, 2022.  (Doc. 57.)

October 20 and October 26, 2016, in the amounts of $85,000 and $83,850, respectively. (*Id.* ¶¶ 13–14.)

On or about November 4, 2016, Aufiero cancelled his flight and requested a refund be paid to the S Group. (*Id.* ¶ 15.) During November and December 2016, IFR refunded a total of $161,495.49—Aufiero's original deposit less IFR's expenses—in three wire transfers to accounts believed to be controlled by Aufiero. (*Id.* ¶ 16.)

Through a letter dated January 6, 2017, IFR learned from Amex that Aufiero had claimed IFR owed him a refund of the total deposit amount of $169,850 despite IFR having already paid him back his deposit less expenses. (*Id.* ¶¶ 17, 20.) As a result, on or about January 12, 2017, Wells Fargo told IFR that it would charge IFR's credit card processing merchant services account ("Account") $170,767.86, which corresponded to the amount Aufiero claimed was owed back to his Amex card.[3] (*See id.* ¶ 21.) IFR told Wells Fargo that it had already refunded Aufiero the $161,495.49 amount, which it asserts was the amount he was due, and that it thus did not owe money to Wells Fargo. (*Id.* ¶ 23.) However, Wells Fargo charged IFR anyway, and suspended IFR's Account so that it could no longer accept credit card payments. (*See id.* ¶¶ 24–25.) The suspension left a "derogatory" mark "on IFR's account," and Wells Fargo's charging IFR led to Aufiero's receiving a refund amount of $161,595.49, as wired by IFR, plus the additional $170,767.96 amount Wells Fargo charged IFR, which IFR says Aufiero received. (*See id.* ¶ 25.)

On or about February 14, 2017, representatives from IFR, Aufiero, and the Agents had a conference call in hopes of resolving their dispute. (*Id.* ¶ 26.) The participants agreed that

---

[3] IFR does not explain the discrepancy between the $170,767.86 amount and the original deposit of $169,850.

Aufiero would pay IFR $161,595.49 so that IFR could pay Wells Fargo the amount it demanded. (*Id*.)  However, IFR asserts that "Aufiero never paid IFR the [amount] that he agreed to pay." (*Id.* ¶ 29.)[4]

On or about September 18, 2017, IFR and Wells Fargo resolved the dispute regarding the charging and suspension of the Account.  (*Id.* ¶ 31.)  Under the parties' Settlement Agreement and Release (the "Settlement"), IFR agreed ███████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████ (Settlement § 2.1.)[5]  Wells Fargo agreed to ████████████████████████████. (*Id.* § 2.2.)  The Settlement further provides that ██████████████████████████████ and that Wells Fargo would ███████████████████████████████████████████████████████████████████ █████████ (*Id.* § 2.3.)

IFR asserts that Wells Fargo agreed to "'unfreeze' IFR's [Account] so that it could process credit card payments again, and . . . remove the derogatory comment from IFR's [Account]."  (SAC ¶ 32.)  Wells Fargo did not remove the "derogatory comment" from IFR's account, which prevented IFR from getting "a new credit card processing merchant services account from other vendors despite having applied for numerous accounts."  (*Id.* ¶ 33.)

---

[4] There is a discrepancy between IFR's pleadings and the exhibits it attaches.  Although IFR asserts that "Aufiero agreed to pay $161,495.49 to IFR," (SAC ¶ 26), an email dated February 15, 2017 from IFR to Aufiero and the Agents, which states it was written "to confirm the terms of the agreement we reached in yesterday's phone conference," shows that IFR agreed that it would receive wire transfers in a total amount of $163,263.66, (*see* SAC Ex. 5, at 1–2.)

[5] "Settlement" refers to the Settlement Agreement and Release of Claims between IFR and Wells Fargo, (Doc. 75-1), which was filed under seal on August 9, 2023.

On March 13, 2017, IFR filed a lawsuit in the Florida Circuit Court of the Nineteenth

Judicial Circuit against Aufiero, Slocum, and S Group.  (Egan Decl. Ex. A.)[6]  IFR secured a

default judgment in that action on January 31, 2018.  (*Id.* Ex. B.)  On or about June 6, 2018, IFR

filed an action to enforce the judgment in the Supreme Court of New York, Suffolk County, (*id.*

Ex. C), and on September 2, 2018, Aufiero filed papers opposing enforcement on the grounds

that there had never been personal jurisdiction over Aufiero in Florida or adequate service of

process on Aufiero, (*id.* Ex. D).  On April 4, 2019, IFR, Aufiero, and Slocum entered into an

agreement to vacate the Florida judgment, (*id.* Ex. E), and based on this, the Florida Circuit

Court vacated the judgment on April 9, 2019, (*id.* Ex. F).  On July 2, 2019, IFR and Aufiero

stipulated to dismissal of the enforcement action in Suffolk County.  (*Id.* Ex. G.)

## II.    Procedural History

IFR filed its original complaint in this action on April 8, 2021.  (Doc. 1.)  On June 25,

2021, Wells Fargo filed a motion to dismiss for failure to state a claim.  (Doc. 25.)  On June 26,

2021, Aufiero filed his motion to dismiss for failure to state a claim.  (Doc. 29.)  IFR filed

opposition papers to each motion on July 23, 2021.  (Docs. 33–34.)  Defendants filed reply briefs

on August 5 and August 6, 2021.  (Docs. 41, 43.)[7]

On February 23, 2022, I sua sponte dismissed the original complaint for failure to plead

facts establishing subject matter jurisdiction.  (Doc. 51.)  I granted IFR leave to file an amended

complaint and instructed Defendants that they could file letter motions to renew their motions to

dismiss once a jurisdictionally sufficient complaint had been filed.  (*Id.*)  On February 24, 2022,

---

[6] "Egan Decl." refers to the Declaration of Brian T. Egan in Support of Aufiero's Motion to Dismiss, (Doc. 70), and the exhibits thereto, filed on August 9, 2023.

[7] Additionally, Wells Fargo sought and was granted permission to file papers supporting its motion to dismiss publicly with redactions and under seal in unredacted form.  (*See* Docs. 32, 47.)

IFR filed an amended complaint.  (Doc. 52.)  On March 11, 2022, I dismissed the amended complaint for again failing to plead subject matter jurisdiction and again granted IFR leave to amend.  (Doc. 55.)

On March 14, 2022, IFR filed the operative Second Amended Complaint.  (Doc. 57.) Defendants filed letter motions renewing their motions to dismiss on March 25, 2022.  (Docs. 58–59.)

### III.    <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (citation omitted).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 230 (2d Cir. 2016)

(internal quotations marks omitted).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*  "[T]he court may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks omitted).

## IV.    <u>Discussion</u>

IFR asserts claims against Aufiero for fraud (SAC ¶¶ 36–40), unjust enrichment, (*id.* ¶¶ 41–43), and breach of contract, (*id.* ¶¶ 47–51), and against Wells Fargo for fraud, (*id.* ¶¶ 52–56), unjust enrichment, (*id.* ¶¶ 57–59), and breach of contract, (*id.* ¶¶ 63–68).[8]

Aufiero argues, among other things, that as a result of New York's borrowing statute, C.P.L.R. § 202, all of IFR's claims against him are time barred.  (Aufiero MTD 10.)[9]  Wells Fargo argues that the breach-of-contract claim must be dismissed because IFR's allegations of breach are inconsistent with the Settlement, and that the other claims cannot stand independently of the breach-of-contract claim.  (*See* WF MTD 5, 7, 12.)[10]

### A.    IFR's Claims Against Aufiero

IFR's claims against Aufiero are time-barred.  A defendant may raise a limitations argument in a pre-answer Rule 12(b)(6) motion to dismiss "if the defense appears on the face of

---

[8] IFR also asserted claims for unfair competition against all Defendants in the SAC, but it expressly stated that it withdrew those claims as part of its briefing on the instant motions.  (Doc. 33, at 1 n.1; Doc. 34, at 1 n.1.)

[9] "Aufiero MTD" refers to the Memorandum of Law in Support of Aufiero's Motion to Dismiss filed on August 9, 2023.  (Doc. 69.)

[10] "WF MTD" refers to the Memorandum of Law in Support of Wells Fargo's Motion to Dismiss filed on August 9, 2023.  (Doc. 73 (public, redacted version), Doc. 75 (sealed).)

the complaint." *Staehr*, 547 F.3d at 425 (citations omitted).  In a diversity action, "a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) (citations omitted).  Under C.P.L.R. § 202, known as New York's "borrowing" statute, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either:  (1) New York; or (2) the state where the cause of action accrued." *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015) (quoting *Stuart*, 158 F.3d at 627).  New York identifies accrual "at the time and in the place of the injury," which, when addressing a "purely economic" injury, is "where the plaintiff resides and sustains the economic impact of the loss." *Id.* at 498 (quoting *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999)).  "Hence, an action by a nonresident on a foreign cause of action is untimely if it is barred under the law of either New York or the state where the injury occurred." *Stuart*, 158 F.3d at 627.

Here, IFR is a Florida company alleging economic harm by virtue of Aufiero's conduct. Its claim thus accrued in Florida, *see Kleinhandler*, 807 F.3d at 497, and C.P.L.R. § 202 requires "applying Florida's shorter statute of limitations," *All Children's Hosp., Inc. v. Citigroup Glob. Markets, Inc.*, 59 N.Y.S.3d 7, 8 (1st Dep't 2017).  Specifically, Florida provides the shorter limitations period for all claims against Aufiero.  The parties do not dispute that Florida's statute of limitations applies to the causes of action in the Second Amended Complaint against Aufiero. (Aufiero MTD 13–14; Opp'n Aufiero MTD 3–4.)[11]

New York law provides for a six-year limitations period on breach of contract and unjust

---

[11] "Opp'n Aufiero MTD" refers to IFR's Response to Aufiero's Motion to Dismiss.  (Doc. 78.)

enrichment claims, a period for fraud claims of "the greater of six years from the date the cause

action accrued or two years from the time the plaintiff or . . . discovered the fraud, or could with

reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213.  Florida law provides a four-year

limitations period for all such claims.[12]  Fla. Stat. § 95.11(3)(i), (j); *All Children's*, 59 N.Y.S.3d

at 8 (applying § 95.11(3) to breach of contract and fraud claims); *Fowler v. Towse*, 900 F. Supp.

454, 459 (S.D. Fla. 1995) (applying the "four year limitations period" from § 95.11(3) to unjust

enrichment claims premised on "repayment of advanced monies").

Under Florida law, "[a] cause of action accrues when the last element constituting the

cause of action occurs."  Fla. State. § 95.031(1).  This means that breach of contract claims

accrue on "the date of the first breach."  *Servicios De Almacen Fiscal Zona Franca Y Mandatos*

*S.A. v. Ryder Int'l, Inc.*, 264 F. App'x 878, 880 (11th Cir. 2008) (citing *Abbott Labs., Inc. v. Gen.*

*Elec. Cap.,* 765 So.2d 737, 740 (Fla. Dist. Ct. App. 2000)).  "A fraud action accrues when the

last element occurs or when the plaintiff knew, or through the exercise of due diligence should

have known, of the facts constituting the fraud."  *Falsetto v. Liss*, 275 So.3d 693, 697 (Fla. Dist.

Ct. App. 2019) (internal quotation marks omitted).  An unjust enrichment action accrues when a

defendant knowingly "retained the benefit" received from plaintiff.  *See Devengoechea v.*

*Bolivarian Republic of Venezuela*, No. 12-CV-23743, 2016 WL 3951279, at *11 (S.D. Fla. Jan.

---

[12] IFR argues that "Fla. Stat. 95.031(2)(a) provid[es] for a 12 year statute of limitations for fraud actions."  (Opp'n Aufiero MTD 4.)  This is wrong.  Section 95.031(2)(1) is a statute of repose.  The cited statutes states that fraud actions do not accrue until "the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence . . . but in any event an action for fraud under [Fla. Stat. §] 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered."  Fla. Stat. § 95.031(2)(a).  In other words, the four-year limitations period on a fraud claim begins to run on the date the plaintiff did discover or should have discovered the facts underlying the claim, and in no event may a plaintiff bring a fraud claim more than twelve years after the commission of the fraud. *Holliday v. Markel Syndicate 3000 at Underwriters at Lloyds, London*, 791 F. App'x 891, 892 (11th Cir. 2020) ("These provisions contain two separate limitations: the twelve-year repose period begins from the date the alleged fraud was committed, whereas the four-year statute of limitations begins once the fraud is discovered (or should have been discovered).").

20, 2016), *report and recommendation adopted*, 2016 WL 3951278 (S.D. Fla. Feb. 18, 2016).

Here, the latest possible date of accrual for any of IFR's claims against Aufiero is February 17, 2017. IFR pleads that Aufiero and the Agents were to repay IFR certain money "no later than 5 pm on Feb. 17, 2017." (SAC Ex. 5, at 1; *see also* SAC ¶ 48.) Thus, under Florida law, February 17, 2017 is the accrual date for the contract claim because it is "the date of the [alleged] breach." *Servicios De Almacen*, 264 F. App'x at 880. IFR's fraud, unjust enrichment, and unfair competition claims accrued even earlier—no later than January 11, 2017, the date that "Wells Fargo suspended IFR's credit card processing merchant services account" for failing to pay Amex/Wells Fargo for the refund that Aufiero had allegedly received from IFR. (SAC ¶ 24; *see also id*. ¶¶ 17–25.)

Given these accrual dates and the applicable four-year statutes of limitations, IFR's claims against Aufiero are time barred. Plaintiff did not file this action until April 8, 2021, more than four years after the latest of the accrual dates.

In opposing this conclusion, IFR does not provide alternative accrual dates, but instead argues that the statutes of limitations are tolled by operation of Florida law. (*See* Opp'n Aufiero MTD 3–4 (discussing tolling, not accrual dates).) IFR points out that a Florida statute provides that a statute of limitations does not run if the defendant is "absen[t] from the state." Fla. Stat. § 95.051(1)(a). IFR also argues that equitable tolling applies to save its claims against Aufiero. (Opp'n Aufiero MTD 3–4.)

These arguments have no merit. As an initial matter, Florida's absent-defendant tolling provision "shall not apply if service of process . . . can be made in a manner sufficient to confer jurisdiction to grant the relief sought." Fla. Stat. § 95.051. Thus, by the terms of the statute, if a plaintiff like IFR could have served process on Aufiero in New York, the absent-defendant

tolling provision "shall not apply." *Id.* IFR does not argue, and nothing in its papers suggests, that it was unable to serve process on Aufiero.[13]

Regardless of this statutory exception, the operation of C.P.L.R. § 202 dooms IFR's counterargument. The New York Court of Appeals has held that under New York's borrowing statute, a sister State's absent-defendant tolling provision does not apply so long as the "defendants . . . were amenable to suit in New York for the entire period of [the State's] statute of limitations." *GML, Inc. v. Cinque & Cinque, P.C.*, 9 N.Y.3d 949, 951 (2007). C.P.L.R. § 202 controls here. Nothing suggests Aufiero, an alleged New York resident and citizen, could not have been sued in New York before IFR's time to initiate suit had expired.

With regard to equitable tolling, in Florida that "doctrine is generally applied where a plaintiff has been misled or lulled into inaction and has, in some *extraordinary* way, been prevented from asserting his rights, or has timely asserted his rights in the wrong forum." *FDIC v. Nationwide Equities Corp.*, 304 So.3d 1240, 1244 (Fla. Dist. Ct. App. 2020) (citations omitted) (emphasis in original).[14] "The general test for equitable tolling requires the party seeking tolling to prove (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (internal quotation marks omitted).

---

[13] Although Aufiero opposed enforcement of the default judgment from the Florida action in New York on the grounds of personal jurisdiction, (Egan Decl. Ex. D), in this action, IFR alleges that Aufiero precipitated events by requesting a chargeback to which he was not entitled, thereby causing it injury, and then breached a contract to wire money to IFR in Florida. (*See generally* SAC; *id.* Ex. 5.) The parties have not briefed the issue, but it appears that Aufiero made contacts with Florida and caused injury to IFR in Florida that would be sufficient to give rise to specific personal jurisdiction there over Aufiero. *See generally Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 325 (2d Cir. 2016) (explaining that "personal jurisdiction" requires, among other things, a defendant's "sufficient minimum contacts with the forum such that the maintenance of the action did not offend traditional notions of fair play and substantial justice.").

[14] There is no material difference between the principles underlying equitable tolling in Florida and under federal law. *See FDIC*, 304 So.3d at 1243–44 (collecting federal cases).

IFR does not identify any facts rendering equitable tolling applicable.  It argues that Aufiero "engaged in misconduct" that gave rise to its claims, but this misses the point.  For purposes of equitable tolling the issue is not Aufiero's conduct that led to the causes of action but rather whether his conduct or anyone or anything else prevented IFR from timely filing suit. (Opp'n Aufiero MTD 6.)  Nothing suggests this is the case here.

Therefore, Aufiero's motion to dismiss IFR's claims against him is GRANTED.

### B.   *IFR's Claims Against Wells Fargo*

#### 1.    **Breach of Contract**

IFR's breach of contract claim against Wells Fargo is related to the parties' Settlement; IFR alleges that as part of the Settlement, "Wells Fargo agreed to 'unfreeze' IFR's merchant services account and remove the derogatory comment from the same should IFR pay Wells Fargo the settlement amount of ███████  (SAC ¶ 64.)  IFR further alleges that even though it paid the ███████, "Wells Fargo failed to 'unfreeze' IFR's merchant services account and failed to remove the derogatory comment from the same."  (*Id.* ¶¶ 65–66.)  Delaware law applies to the contract claim because of a ████████████████████  (Settlement § 6.5.)[15]  *See Philips Credit v. Regent Health Group*, 953 F. Supp. 482, 502 (S.D.N.Y. 1997) ("New York law recognizes the validity of contractual choice-of-law provisions.").

Under Delaware law, to state a claim for breach of contract, a plaintiff must allege "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."  *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016) (internal quotation marks omitted).  Obligations not embodied in the contract "cannot

---

[15] The parties agree that Delaware law applies.  (WF MTD 5 n.3; Opp'n WF MTD 3 n.3.)  "Opp'n WF MTD" refers to IFR's Response to Wells Fargo's Motion to Dismiss filed on August 30, 2023.  (Doc. 77.)

serve as a basis for a breach of contract claim." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 141 (Del. Ch. 2003).

A "court must determine the intent of the parties from the contract language" and "interpret[] the contract based on the plain meaning of the language on the face of the contract." *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) (quoting *Twin City Fire Ins. Co. v. Del. Racing Ass'n,* 840 A.2d 624, 628 (Del. 2003)).  Under the parol evidence rule, if the plain language of a contract is unambiguous, the Court "will not resort to extrinsic evidence to determine the parties' intentions." *BLGH Holdings LLC v. enXco LFG Holdings, LLC*, 41 A.3d 410, 414 (Del. 2012); *accord Galantino v. Baffone,* 46 A.3d 1076, 1081 (Del. 2012) ("The parol evidence rule bars the admission of evidence extrinsic to an unambiguous, integrated written contract for the purpose of varying or contradicting the terms of that contract.").

The Settlement[16] contains a  between IFR and Wells Fargo and provides that in exchange for IFR's ████████ and its ████████████████, Wells Fargo ███████████████████████████████████ ███████████████████████████████ (Settlement § 2.3(b).)  The Settlement contains ████████████ stating that it ███████████████████████ █████████████████████████████████ ████████████████████████████████ (*Id.* § 6.2.) Contrary to the allegations in the Second Amended Complaint, the Settlement does not mention the "derogatory comment" on IFR's account.  (*Compare* Settlement (no mention of "derogatory

---

[16] I may consider the Settlement in resolving Wells Fargo's motion to dismiss as it is incorporated within the Second Amended Complaint by reference.  *See Nicosia*, 834 F.3d at 230.

comment"), *with* SAC ¶ 64 (pleading that pursuant to the Settlement, "Wells Fargo agreed

to . . . remove the derogatory comment from" IFR's account).)

As an initial matter, the Settlement plainly does not contemplate that Wells Fargo take

any action regarding a "derogatory comment."  The Settlement also states that it is the parties'

██████████████████  (Settlement § 6.2.)  Thus, Wells Fargo had no "contractual obligation" to

remove any such comment.  *Connelly*, 135 A.3d at 1279 n.28.  Because a portion of IFR's

contract claim is premised on the "derogatory comment," (SAC ¶ 64), Wells Fargo's motion to

dismiss the contract claim is GRANTED as it relates to the derogatory comment.

The Settlement's obligation for Wells Fargo—specifically, WFMS—to ██████████

██████  also does not support a contract claim.  (Settlement § 2.3(b).)  Wells Fargo points out

that the account number referenced in the Settlement ████████████████████

████████████████  (WF MTD 2–3.)  This account is not, as IFR alleges in the

Second Amended Complaint, IFR's "credit card processing merchant services account."  (*Id.*

(quoting SAC ¶ 31.)  To the extent the allegations in the Second Amended Complaint conflict

with the terms of the Settlement, the Settlement controls.  *Weston Funding, LLC v. Consorcio G*

*Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 587 (S.D.N.Y. 2006) (citing *Barnum v.*

*Millbrook Care L.P.*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y.), *aff'd*, 43 F.3d 1458 (2d Cir.

1994)).  Moreover, in opposing Wells Fargo's motion to dismiss, IFR concedes that "IFR's

checking Account Number [ending in] 5887" is the account ████████████████

██████████  (Opp'n WF MTD 4.)  IFR's concession dooms its claim, since the Second

Amended Complaint alleges a purported obligation to unfreeze IFR's "credit card processing

merchant services account" not its ██████████.  Therefore, Wells Fargo did not breach that

obligation.

IFR's contract claim therefore fails, and its arguments to the contrary are unavailing. In an attempt to have me consider evidence extrinsic to the Settlement, IFR argues that the Settlement is ambiguous as to "whether [Wells Fargo] agreed to restore IFR's ability to again use WFMS to process credit card payments." (Opp'n WF MTD 3.) "A contract is ambiguous if 'more than one meaning may reasonably be ascribed to the language used.'" *Cui v. Planet Green Holdings, Inc.*, No. 23-CV-5683, 2024 WL 3566991, at *4 (E.D.N.Y. July 29, 2024) (quoting *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006)).

None of IFR's purported ambiguities actually render the Settlement ambiguous. First, IFR asserts that in light of a pre-Settlement phone call, it interpreted the words "'shall also' to mean in addition to allowing IFR to again use the . . . WFMS payment service." (Opp'n WF MTD 4 (emphasis omitted).) In the context of the Settlement, however, the words "shall also" refers to the fact that the obligation to ███████ was the second in a list of WFMS' obligations under the Settlement (the first being that ████████████████████████████ ████████████████████████ (Settlement § 2.3(a)–(b).)

Second, IFR states that ambiguity arises because the Settlement was between IFR and WFMS, not the Wells Fargo entity administering the checking account. (Opp'n WF MTD 4.) It does not follow, however, that the Settlement required WFMS to perform an obligation—unfreezing the merchant services account—that does not appear in the Settlement.

Third, with regard to the language in the Settlement that WFMS would ███████ IFR's account ████████████████████████████████ (Settlement § 2.3(b)), IFR argues that "it is unreasonable to believe that IFR would have entered into an agreement with WFMS that provided that ████████████████████████ ███████ (Opp'n WF MTD 4). This argument is inconsistent with plain language of the

Settlement, which contemplates that ████████████████████████████████████████
████████████████████████████████████████████, and it is reasonable that IFR

would have agreed to this term given that it achieved the Settlement for ████████████

████████████████████████████████████. (*See* SAC ¶ 21.)

Fourth, IFR states that it is also "unreasonable to believe" that it would have agreed to

██████████████████████ to use with a credit card processing company other than Wells

Fargo (rather than, presumably, opening a checking account with another bank).  (Opp'n WF

MTD 5.)  However, a "court's role is to enforce [an] agreement as written" between

sophisticated parties, "[e]ven if the bargain they strike ends up a bad deal for one or both

parties."  *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021).

In short, none of IFR's attempts to introduce ambiguity into the Settlement succeed.

Therefore, I cannot consider IFR's extrinsic evidence offered to support its interpretation of the

Settlement.  *See, e.g.*, *Galantino*, 46 A.3d at 1081.  Because Wells Fargo did not breach an

obligation in the Settlement, its motion to dismiss IFR's contract claim is GRANTED.

## 2.    Fraud and Unjust Enrichment

IFR's fraud claim against Wells Fargo is that the failure "to restore IFR's ability to use

WFMS to process credit card payments in exchange for" the ██████ Settlement payment

contradicted a promise Defendants made during a pre-Settlement negotiation in August 2017.

(Opp'n WF MTD 7–8.)  This same contention underlies IFR's unjust enrichment claim.  (*See*

SAC ¶ 32.)  The parties agree that Florida law applies to these claims.[17]  (Opp'n WF MTD 7 n.4;

---

[17] *See also Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 273 (S.D.N.Y. 2019) (explaining that under
New York's choice-of-law rules, "conduct-regulating" torts like fraud are governed by "the law of the jurisdiction
where the tort occurred" (quoting *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013))); *Yookel, Inc. v. United States
Steel Corp.*, No. 20-CV-4513, 2022 WL 542379, at *4 (E.D.N.Y. Feb. 23, 2022) (explaining that a "claim

WF MTD 7 n.5.)

These claims fail because they duplicate IFR's contract claim.  Florida law follows the "independent tort doctrine," which provides that "where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud." *Inspirations Nevada LLC v. Med Pro Billing, Inc.*, No. 20-CV-60268, 2021 WL 2156677, at *4, *6 (S.D. Fla. May 26, 2021) (quoting *Peebles v. Puig*, 223 So.3d 1065, 1068 (Fla. Dist. Ct. App. 2017)).  Where a plaintiff alleges that "representations were made to induce" it to perform one side of a contract, its claims premised on those representations "are not independent of [p]laintiff's breach of contract claim" and "are barred by the independent tort doctrine." *Id.* at *6.  Similarly, Florida law provides that a plaintiff may not bring an unjust enrichment claim when, as here, there is "an express contract . . . concerning the same subject matter." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019).

The fraud claim is thus barred by Florida's independent tort doctrine, as the "representation" IFR alleges "concerns the heart of the parties' agreement"—the performance Wells Fargo owed in exchange for IFR's payment—and "simply applying the label of 'fraudulent inducement'" or otherwise "will not suffice to subvert . . . the independent tort doctrine." *Med Pro Billing*, 2021 WL 2156677, at *6 (internal quotation marks omitted).  Similarly, the unjust enrichment claim must fail, because the Settlement is "an express contract . . . concerning the same subject matter" of what Wells Fargo was supposed to provide IFR in exchange for payment. *Alhassid*, 771 F. App'x at 969.

IFR's counterarguments are unavailing.  As to the fraud claim, IFR argues that, under

---

for unjust enrichment involves a conduct regulating law" when it arises from the same facts giving rise to a "fraudulent inducement" claim).

Delaware law, a fraudulent inducement claim will not be barred without "a clear anti-reliance clause." (*Id.* at 4.) This argument fails for two reasons. First, as discussed, the fraud claim is governed by Florida law, not Delaware law, and IFR makes no argument concerning why Delaware law should apply. *See supra* n.17. Second, even if Delaware law did apply, that body of law distinguishes between situations where a party alleges "not misrepresentations of material *fact* . . . but rather prior parol evidence that would vary the extant terms in the subsequent integrated writings." *Black Horse Cap., LP v. Xstelos Holdings, Inc.*, No. C.A. 8642-VCP, 2014 WL 5025926, at *24 (Del. Ch. Sept. 30, 2014); *see also id.* at *24 n.150 (distinguishing itself from *Kronenberg v. Katz*, 872 A.2d 568, 592 (Del. Ch. 2004)). Indeed, in the case on which IFR relies, then-Vice Chancellor Leo Strine of the Delaware Court of Chancery allowed a fraud claim to proceed despite an integration clause while observing that "typical integration clauses do not operate to bar fraud claims on factual statements not made in the written agreement." *Kronenberg*, 872 A.2d at 592. However, IFR does not offer a factual statement separate from the Settlement. Rather, it offers an account of Wells Fargo's promised performance that conflicts with the Settlement.

With regard to the unjust enrichment claim, IFR argues that under Federal Rule of Civil Procedure 8(d)(2) a plaintiff may plead an unjust enrichment claim in the alternative to a breach of contract claim. (*See* Opp'n WF MTD 8 n.5.) In some circumstances, Florida law supports such alternative pleading "so that, if for any reason the plaintiff fails in his proof of the express contract, he may have an opportunity to at least recover the value of the work actually done or the materials actually furnished, or so much thereof as have not been paid for, upon an implied contract." *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (internal quotation marks omitted). "However, upon a showing that an express contract exists,

[a] quasi-contract claim fails." *Id.* (collecting cases).  Thus, dismissal is warranted under Rule

12(b)(6) when "the parties are governed by an express contract covering the same subject matter

as the unjust enrichment claim and [when] neither party contests the existence of [a contractual]

[a]greement." *Godwin Pumps of Am., Inc. v. Ramer*, No. 8:11-CV-580, 2011 WL 2181183, at *3

(M.D. Fla. June 3, 2011) (internal quotation marks omitted)).  Here, there is no dispute that the

Settlement is a valid contract, and this is not a case where the "[d]efendant denies the existence

of an express contract." *ThunderWave*, 954 F. Supp. at 1566.  Thus, alternative pleading is not

available, and the Settlement dooms IFR's unjust enrichment claim.  *See, e.g.*, *Alhassid*, 771 F.

App'x at 969; *R.E. Loans, LLC v. Eagle Group Brokers, LLC*, No. 3:08-CV-76, 2009 WL

837668, at *7 (N.D. Fla. Mar. 30, 2009) (dismissing unjust enrichment claim which "rel[ied]

solely on the existence of the express contract"); *Godwin Pumps*, 2011 WL 2181183, at *3.

Accordingly, Wells Fargo's motion to dismiss IFR's fraud and unjust enrichment claims

is GRANTED.

### C.  *Leave to Amend*

IFR requests that it be granted "leave to amend . . . to correct any deficiencies in its

pleading." (Opp'n Aufiero MTD 5; Opp'n WF MTD 5.)  At this point in the action, "a party

may amend its pleading only with the opposing party's written consent or the court's leave.  The

court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "At the same

time, 'leave to amend, though liberally granted, may properly be denied for:  undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc." *Calcano v. True Religion Apparel, Inc.*, 19-CV-

10442, 2022 WL 973732, at *7 (S.D.N.Y. Mar. 31, 2022) (quoting *Ruotolo v. City of New York*,

514 F.3d 184, 191 (2d Cir. 2008)).  Because of this, courts will often deny leave to amend when

the party requesting leave has provided "no inkling of what their amendment might look like or what additional facts may entitle to them to relief." *See United States ex rel. Hussain v. CDM Smith, Inc.*, 14-CV-9107, 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018) (quoting *In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366, 392 (S.D.N.Y. 2013), *aff'd sub nom. Welch v. Havenstein*, 553 F. App'x 54 (2d Cir. 2014)).

Here, IFR did not provide a copy of its proposed third amended complaint.  IFR's papers also do not provide any hint of what facts it might offer in a third amended complaint to make its claims sufficient.  There is nothing in any filing that would suggest the claims against Aufiero are timely.  With regard to Wells Fargo, IFR included with its briefing declarations from its representatives generally stating that they believed that the Settlement would result in IFR's "ability to resume processing credit cards."  (Doc. 33-1 ¶ 3; Doc. 33-2 ¶ 3.)  Once again, this is merely "evidence extrinsic to an unambiguous, integrated written contract" offered "for the purpose of varying or contradicting the terms of" the Settlement, which renders it barred by "the parol evidence rule."  *Galantino*, 46 A.3d 1081.  Such parol evidence cannot be countenanced, and as such allowing IFR to amend would be futile.

## V.    <u>Conclusion</u>

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.

Given the parties' requests to seal information regarding the Settlement, (*see* Docs. 71, 79), this Opinion & Order will be initially filed under electronic seal.  Accordingly, it is hereby:

ORDERED that the parties meet and confer, and no later than March 18, 2025, jointly submit a proposed redacted Opinion & Order that may be filed on the public docket.  If the parties do not submit a proposed redacted Opinion & Order by that date, I will file this Opinion

& Order on the public docket without redaction.  This redaction process shall not delay the Clerk

of Court's entry of judgment in the case.

 The Clerk of Court is respectfully directed to file this Opinion & Order at the selected

party level, accessible only to the Court and the parties; to terminate the open motions at Docs.

68, 73, and 75; and to close the case.

SO ORDERED.

Dated: March 4, 2025
  New York, New York

Opinion & Order decided and filed
under seal March 4, 2025.

Partially redacted Opinion & Order
filed March 19, 2025.

_Vernon Broderick_

Vernon S. Broderick
United States District Judge